# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE L. CLARK,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Case No. 1:16-cv-00437-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 20, 26) |

**I.**

**INTRODUCTION**

Plaintiff Christine L. Clark ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from a history of substance abuse in remission, affective disorder, and status-post thoracic spine fracture. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 6, 8.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff had a prior application for Social Security benefits denied on June 14, 2011. (AR 84-88.) Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 13, 2012, and a Title XVI application for supplemental security income on July 17, 2012. (AR 22, 31.) Plaintiff's applications were initially denied on December 7, 2012; and denied upon reconsideration on April 5, 2013. (AR 90-94, 95-99, 102-106, 107-111.) Plaintiff requested and received a hearing before Administrative Law Judge Vincent Misenti ("the ALJ"). Plaintiff appeared for a video hearing on July 1, 2014. (AR 727-756.) On September 23, 2014, the ALJ found that Plaintiff was not disabled. (AR 707-719.) The Appeals Council denied Plaintiff's request for review on February 1, 2016. (AR 701-703.[2])

### A. Relevant Hearing Testimony

Plaintiff testified at the July 1, 2014 video hearing with counsel. (AR 732-749.) Plaintiff is four eleven and weighs 165 pounds (AR 732.) Plaintiff is right handed. (AR 732.) Plaintiff is married and lives in a house with her husband who is unemployed and recently disabled. (AR 732-733.) Plaintiff receives general relief. (AR 733.) Plaintiff had a driver's license but it was suspended in 2009 for multiple speeding tickets. (AR 733.) Plaintiff takes the bus or her mother takes her to appointments. (AR 733-34.) Plaintiff has not worked for wages or pay since August 1, 2009. (AR 734.)

Plaintiff suffers from depression, bipolar disorder, explosive episodes of anger, and anxiety. (AR 734-735.) Plaintiff takes medication for bipolar depression, adult onset ADD/ADHS, and to help her sleep and her mood swings. (AR 737.) The medication has helped and she is better than she was three or four years ago. (AR 737.) The episodes have been reduced from daily, where it was constant twenty four hours a day, to one to two times a week. (AR 737, 739.) Plaintiff has thrown things and went to jail for several months after an incident

---

[2] Plaintiff asserts that the Appeals Counsel found legal error and remanded this action for further administrative proceedings. See ECF No. 20 at 2. However, the record cited found no reason to review the ALJ's decision and the request for review was denied. (AR 701.)

with her mother-in-law. (AR 739.) Plaintiff is seeking a psychiatrist every six to eight weeks and a therapist every other week. (AR 738.) Plaintiff has not attended group therapy because she is concerned about her anger outbursts. (AR 738.)

Plaintiff's bipolar disorder causes her to have explosive episodes of rage. (AR 735.) She will not even realize that an episode is coming on until someone tells her to calm down and makes her aware of it. (AR 735.) Plaintiff states that it is a black out situation. (AR 735.) The extreme anger can last for days at a time. (AR 735.) When Plaintiff gets depressed she will remain in bed for days at a time not wanting to do much of anything. (AR 735.) She will have listlessness, insomnia, anxiety, and lack of concentration. (AR 736.) Plaintiff loses concentration every 20 to 30 minutes because she will get distracted by something else. (AR 736.) Plaintiff enjoys sitting and playing video games on the computer. (AR 745.) She does not play video games very often because she can only sit and concentrate on games for twenty or thirty minutes. (AR 745.)

Plaintiff's anger issues have caused her to lose most of her jobs in the past. (AR 736.) When she is being given constructive criticism by a supervisor her anger flairs up and she has been known to explode at things that would not have made another person angry. (AR 736.) The bouts of anger come out of nowhere and the next thing she knows she is screaming and yelling and throwing things. (AR 748.) It takes about twenty or thirty minutes for her husband to get her calmed down enough to go and sit down and relax and talk about what just happened. (AR 748.) When she was working, Plaintiff would call in sick or go home early at least once a month if not more because she was angry and did not want to tell her supervisor the reason she was not coming in. (AR 747.)

Her lack of concentration would make her unable to have a job that would require her to sit at a computer or do paperwork for longer than 20 minutes. (AR 737.) Plaintiff would be unable to do a job stocking shelves because of her lack of concentration. (AR 740.) After five to fifteen minutes she would have to change tasks. (AR 740.) When she cleans her house she does one room a day and posts a schedule to keep her on track and tell her what she should be doing. (AR 740.)

On occasion, Plaintiff has been homeless in the past. (AR 739-740.) Plaintiff used recreational drugs in the past. (AR 740.) Plaintiff was using recreational drugs on a regular basis up until about 6 years ago. (AR 740.) Plaintiff has had a couple relapses but has not used on a regular basis for six years. (AR 740.)

A vocational expert ("VE"), Cheryl R. Chandler, also testified at the hearing. (AR 749-755.) The VE categorized Plaintiff's past work as a substance abuse counselor, Dictionary of Occupational Title ("DOT") number 045.107-058, sedentary. (AR 750-751.) The job is classified as an SVP 8, but the VE classified it as an SVP 6 because it did not rise to the four to ten year category as it was a two year program and the DOT contemplates a master's level program. (AR 750-751.)

The ALJ presented a hypothetical of an individual with the same educational history and vocational background as Plaintiff, who is limited to a light range of work and is limited to simple, routine, repetitive tasks (that is remembering, carrying out, and using judgment limited to simple work-related decisions) and responding appropriately and socially interacting with supervisors, coworkers, and the public occasionally. (AR 751.) The VE opined that this individual would not be able to perform Plaintiff's past work. (AR 751.) This individual, doing unskilled, light work with only occasional contact with others, would be able to perform work as a marker, DOT number 369.687-026, light, SVP 2 with approximately 129,000 jobs in the national economy. (AR 752.) This individual would also be able to perform work as a folding machine operator, DOT number 363.686-010, light, unskilled, SVP 2 with 42,000 jobs in the national economy. (AR 752.)

The ALJ presented a hypothetical of this same individual in the first hypothetical who could rarely socially interact with the public or coworkers and occasionally interact with supervisors. (AR 752-753.) The VE opined that this would be too limiting as interaction with coworkers would be more than rarely and there would be no jobs that this individual could perform. (AR 753.)

Plaintiff's attorney presented a hypothetical of an individual who would be off task roughly fifteen to twenty percent of workday. The VE opined that there would be no work that

this individual could perform in the national economy. (AR 755.)

**B.  ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2011.
- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 1, 2009.
- Plaintiff has the following severe impairments: affective disorder and status-post thoracic spine fracture.
- Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to simple, repetitive tasks and using judgment and interacting with the public on an occasional basis.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on June 9, 1978, and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled" whether or not Plaintiff has transferable job skills.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, from August 1, 2009, through the date of this decision.

(AR 712-718.)

/ / /

/ / /

/ / /

# III.

# LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a

scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff alleges that the ALJ committed legal error by improperly considering the medical opinion of Dr. Muir, Plaintiff's treating physician.[3] Plaintiff argues that Dr. Muir found significant impairment in memory, concentration, and judgment and that Plaintiff had moderate and marked limitations. Plaintiff contends that the ALJ rejected Dr. Muir's opinion and substituted his own lay opinion for that of Dr. Muir.[4]

---

[3] The Court notes that Plaintiff's opening brief does not comply with the requirements of the March 31, 2016 scheduling order. (ECF No. 5.) Plaintiff's opening brief does not contain the following sections which are required by the scheduling order.
    (a) a plain description of appellant's alleged physical or emotional impairments, when appellant contends they became disabling, and how they disable appellant from work;
    (b) a summary of all relevant medical evidence including an explanation of the significance of clinical and laboratory findings and the purpose and effect of prescribed medication and therapy;
    (c) a summary of the relevant testimony at the administrative hearing;
    (d) a recitation of the Commissioner's findings and conclusions relevant to appellant's claims;
    . . . .
(Id. at 3-4.)

[4] Plaintiff also states in passing that the ALJ erred by rejecting her testimony. However, Plaintiff makes no further reference to the credibility finding as to Plaintiff. Further, Defendant only addressed the issue raised in the brief, whether the ALJ properly evaluated the treating physician's medical opinion. Plaintiff has not addressed any alleged error in determining her credibility or provided a basis by which a meaningful analysis can be performed. The Court declines to address the credibility finding without the substance of the alleged error raised by Plaintiff in

1    Defendant responds that the ALJ properly considered the medical evidence and
2 accommodated the limitations found by Dr. Muir. Defendant argues that to the extent that Dr.
3 Muir's 2014 opinion contained limitations that would impair Plaintiff's ability to perform work,
4 the opinion did not specify the extent to which the limitations would impair her ability to work
5 and the ALJ properly gave less weight to these portions of the opinion because they were
6 inconsistent with the medical evidence, including Dr. Muir's notes.

### A. Legal Standard to Evaluate Medical Opinions

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the

---

28  her opening briefing.

record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

### B. Weight Provided to Dr. Muir's Opinion

#### 1. ALJ's Findings

The ALJ reviewed the record and found that prior to the hearing level of review the record demonstrated that Plaintiff's bipolar disorder responded well to medications. (AR 715.) The ALJ also found that there is no physician assessment on Plaintiff's ability to do work prior to Dr. Muir completing an Ability To Do Work Related Activity Assessment on May 29, 2013. (AR 716.) This form indicated that Plaintiff's anxiety, insomnia, and decreased concentration affected her executive functioning such as planning and remembering. (AR 716.) Dr. Muir opined that Plaintiff had marked impairment in her ability to understand and remember complex instructions, carry out complex instructions, and make judgment on complex work-related decisions. (AR 716.) Dr. Muir also endorsed mood instability, affective instability, mood dysregulation, impulsivity, anxiety, depression, and irritability that caused moderate impairments in Plaintiff's ability to interact with the public, supervisors, co-workers or to respond to usual work situations or changes in a routine work setting. (AR 716.)

Dr. Muir completed a Mental Disorder Questionnaire on May 7, 2014. (AR 716.) Dr. Muir indicated that Plaintiff had significant impairments in the areas of memory, concentration, and judgment; and that Plaintiff's mood or affect was affected to such a degree that it affected her ability to work. (AR 716.) Dr. Muir also opined that Plaintiff suffered from mood swings and isolative behavior that would impair her ability to consistently perform full-time work; and that Plaintiff's social functioning was impaired to such a degree that it would impair her ability to work with supervisors, co-workers, and the public and her ability to adapt to stressors that were common in the normal work environment. (AR 716.)

The ALJ provided some weight to Dr. Muir's opinion but in considering Plaintiff's entire treatment history, found that Plaintiff's problems have been situational in nature as she was homeless and struggled with substance abuse. (AR 716.) However, the ALJ found that Plaintiff

was now stable and doing well. (AR 716.) Plaintiff is able to use public transportation, shop, operate a computer, manage money, cook, wash dishes, and clean. (AR 716.) Plaintiff has friends, appears oriented, talkative, and in no distress with her most recent mental health records showing improvement in her situational symptoms and fairly benign mental status findings. (AR 716.)

The ALJ noted that Dr. Perrott, an agency physician noted that Plaintiff had a history of two psychiatric hospitalizations more than three years prior and has been taking medication on and off for a number of years. (AR 714.) Dr. Perrott also noted that the psychiatric records showed improvement of Plaintiff's bipolar disorder with medication. (AR 714.) Dr. Perrott found that Plaintiff was capable of simple, unskilled non-stressful work with limited social interactions due to the effects of her bipolar disorder. (AR 715.)

The ALJ noted that on reconsideration, the agency physicians found that the medical evidence showed that Plaintiff was doing well with medications and therapy, although she continued to have concentration and persistence limitations. (AR 715.) Dr. Harris noted social limitations that would affect Plaintiff's ability to along with coworkers and accept instructions from supervisors. (AR 715.) Plaintiff also would have difficulty interacting with the general public and adapting to changes in the workplace. (AR 715.) Dr. Harris concluded that Plaintiff would be able to perform simple, unskilled work with the same social limitations found by Dr. Perrott. (AR 715.)

2. <u>The ALJ Provided Legitimate and Specific Reasons to Reject Dr. Muir's Opinion</u>

Plaintiff's mental health records demonstrate that she has been receiving some type of mental health treatment since 2010. (AR 601.) On July 6, 2010, Plaintiff was brought in as a 5150[5] after she took a handful of pills and was using meth. (AR 601.)

Plaintiff brought in as a 5150 on July 10, 2010 after a fight with her mother-in-law and was released on July 11, 2010. (AR 408-412.) Plaintiff was oriented. (AR 408.) Her thought

---

[5] When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, . . . or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Social Services as a facility for 72-hour treatment and evaluation. Cal. Pen. Code § 5150.

10

processes were logical and linear. (AR 408.) She had no suicidal or homicidal ideation. (AR 408.) Plaintiff's cognitive processes were intact. (AR 408.) Her mood was euthymic.[6] (AR 408, 413.) Affect was broad and appropriate. (AR 413.) Plaintiff was assessed with a Global Assessment of Function ("GAF") score of 60.[7] (AR 409.) Plaintiff was found to be pleasant, composed, alert and oriented, with good eye contact and normal psychomotor activity. (AR 410.) Initially, Plaintiff was slightly irritable but when she realized the doctor was not trying to pigeonhole her and was listening to her, she was pleasant as noted. (AR 413.) Plaintiff denied auditory or visual hallucinations and any thought disorder and none was noted. (AR 410, 413.) Plaintiff was noted to be socializing with her peers. (AR 413.) Her speech was normoproductive and spontaneous. (AR 413.) Plaintiff's though flow was linear and organized. (AR 413.) Plaintiff's concentration was fairly within range. (AR 410.) Her memory, judgement, and insight were grossly intact. (AR 410.) Her recent and remote memory were intact. (AR 413.) The physician found no signs or symptoms of chronic mental illness. (AR 413, 414.) The doctor found that Plaintiff may have been unstable the prior day due to methamphetamine use and untreated bipolar disorder. (AR 414.) Chronic drug use was noted and Plaintiff's prognosis was "good with treatment of mood disorder and cessation of meth use (not likely at this point)." (AR 413.)

Plaintiff was seen on August 31, 2010 and it was noted that she was unable to sit still for the interview. (AR 349.) Plaintiff's speech was pressured, rapid, and over productive. (AR 349.) Her mood was elevated and affect was congruent. (AR 349.) Plaintiff's thought flow was tangential and thought content was within normal limits. (AR 350.) Her immediate and short-term memory were intact. (AR 350.) Her recent and remote memory were fair. (AR 350.)

---

[6] Moderation of mood, not manic or depressed. Stedman's Medical Dictionary 678 (28th Ed. 2006).

[7] "A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations." Cornelison v. Astrue, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed.2000)). "A GAF score in the range of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." Cornelison, 2011 WL 6001698, at 4 n.6 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 34).

Abstraction and interpretation were fair and judgment was fair to poor. (AR 350.) Plaintiff was assessed with a GAF of 45.[8] (AR 351.) On September 9, 2010, Plaintiff was seen and her speech was noted to be pressured and rapid at times. (AR 342.) On September 20, 2010, Plaintiff expressed that her primary concern was her husband who had relapsed and was using meth and had been taken in as a 5150. (AR 343.)

On October 18, 2010, Plaintiff reported that the medication had helped. (AR 344.) On November 30, 2010, Plaintiff reported that her quality of life had improved and the record notes "no psychological symptoms." (AR 355.)

On January 19, 2011, Plaintiff reported that she had been declined for jobs at Taco Bell. (AR 336.) She was doing well on her medication without any side effects and had excellent control of her anger on Abilify. (AR 336.) Plaintiff had no mania or depression. (AR 336.) Plaintiff's behavior was cooperative. (AR 336.) She had normal motor activity. (AR 336.) She was alert with normal cognition and speech, and was oriented to person, place and time. (AR 336.) Her thought processes were organized; and thought content and mood were normal. (AR 336.) Plaintiff's insight and judgment were good to excellent. (AR 336.) Dr. Chofia noted that Plaintiff had excellent response to medication and assessed her with a GAF of 60. (AR 336-337.)

On February 16, 2011, Plaintiff reported that she was taking her medication and her anger impulse continued to be under good control. (AR 338.) Plaintiff had a normal mental examination and was noted to be stable with a GAF of 60. (AR 338-339.)

On April 13, 2011, Plaintiff reported that she wanted to remain on her medications because they were effective and her stressors were situational and environmental. (AR 393.) Plaintiff was actively looking for a job and had recently had an interview but did not pass the legal background check. (AR 392.) Plaintiff was noted to be cooperative with subterfuge irritation regarding finances. (AR 392.) Her motor activity was normal with slight subtle

---

[8] "A score of 40 signifies '[s]ome impairment in reality testing or communication' or 'major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. . . . .' " Green v. Astrue, No.5:10-cv-01294-AJW, 2011 WL 2785741, at *2 n.2 (C.D. Cal. July 15, 2011) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders Multiaxial Assessment 30, 34 (4th ed. Text rev. 2000) (DSM-IV)).

agitation over her finances. (AR 392.) Plaintiff's mental examination was relatively normal and she was assessed with a GAF of 60. (AR 392-393.)

On June 6, 2011, Dr. Mateus, an agency physician completed a psychiatric review technique and case analysis. (AR 357-367, 368-369.) Dr. Mateus found that Plaintiff had mild limitations in activities of daily living with no other functional limitations. (AR 365.) Dr. Matheus noted that it appeared that with the Abilify, Plaintiff's anger was well controlled and the mental status examination was entirely normal. (AR 369.) Plaintiff was found to have stable bipolar depression and did not have a severe impairment. (AR 369.)

Plaintiff was seen on June 22, 2011, and reported that she had not been able to afford her medication and her depression was out of control. (AR 390.) There was no indication that Plaintiff had any flips into mania. (AR 390.) Plaintiff still reported feeling less anxious and depressed. (AR 390.) Plaintiff had a relatively normal examination and it was noted that less dramatic hysterics were put on display. (AR 391.) Plaintiff's insight and judgment were relatively fair and may even be excellent. (AR 391.) Plaintiff's impulse control was fair. (AR 391.) She was assessed with a GAF of 62.[9] (AR 391.)

On August 22, 2011, Plaintiff reported that her anxiety and depression were better. (AR 388.) She had a normal examination and her diagnoses are noted to be stable. (AR 388-389.) Plaintiff was assessed with a GAF of 62. (AR 389.) Plaintiff continued to report good anger control with her medication and improvement with normal mental examinations and a GAF of 69. (AR 380-381, 382-383, 384-385, 386-387.)

On July 3, 2012, Plaintiff reported being stressed because she was close to be evicted from her home. (AR 378.) Some psychomotor agitation was present, and Plaintiff was crying easily although she reported that her mood was "still good." (AR 378.) Plaintiff was assessed with a GAF of 69. (AR 379.)

On August 28, 2012, Plaintiff reported being very tired and sleeping more than 12 hours a day. (AR 376.) She had slightly pressured speech, with circumstantial but redirectable thought

---

[9] A GAF score of 61 to 70 indicates mild symptoms or some difficulty in social, occupational, or school functioning. Macias v. Colvin, No. 1:15-CV-00107-SKO, 2016 WL 1224067, at *7 (E.D. Cal. Mar. 29, 2016).

processes. (AR 376.) Her mood was stressed and she was crying easily. (AR 376.) Insight and judgment were fair with impulse control relatively improved and fair. (AR 376.) Plaintiff was assessed with a GAF of 69. (AR 377.) The record notes that Plaintiff was over-sedated on an increased dose of Paxil and her medication was decreased. (AR 377.)

Plaintiff was seen again on November 27, 2012 and was off her medication due to lack of funds. (AR 429.) Plaintiff reported mood swings and crying spells when she was not taking her medication. (AR 429.) Plaintiff reported her mood as "blah" and had a relatively normal mental examination. (AR 429.) Plaintiff was assessed with a GAF of 69. (AR 430.)

On December 26, 2012, Dr. Perrot reviewed the record and found that Plaintiff had bipolar disorder and angry moods, but no frank mania or depression. (AR 25.) Plaintiff had a remote history of hospitalization, but was now much improved on Paxil and Abilify. (AR 25.) Dr. Perrot found that Plaintiff was capable of following simple directions, of completing simple tasks, and of completing an average work day. (AR 28.) He recommended that Plaintiff have limited contacts with other people due to her her irritability and history of verbal outburst directed at other people. (AR 28.) Dr. Perrot opined that provided she remains abstinent of illegal substances, Plaintiff is capable of meeting the basic mental demands for doing routine, competitive work requiring no contact with the general public and limited social interaction with coworkers. (AR 28.) Plaintiff would be able to perform at least simple, unskilled, nonstressful work with limited social interactions due to her bipolar illness. (AR 28.)

On December 20, 2012, Plaintiff endorsed a good mood and had a normal mental examination. She was assessed with a GAF of 60 and her bipolar disorder was noted as stable. (AR 428.)

Plaintiff was seen on February 21, 2013, and reported increased mood swings and cycling, irritability, and anger. (AR 423.) She was noted to be cooperative, but slightly hostile in general with slightly pressured speech. (AR 423.) Plaintiff was assessed with a GAF of 53. (AR 423.)

On April 1, 2013, Dr. Harris, an agency physician, completed a case analysis and residual functional capacity assessment. (AR 50-56.) Dr. Harris affirmed the prior mental residual

functional capacity assessment. (AR 54.)

On April 5, 2013, Plaintiff reported that her anxiety had improved and she was not as angry and irritable, overall she was doing much better. (AR 655.) Plaintiff was noted as being cooperative and more pleasant. (AR 655.) She had a relatively normal mental examination and was assessed with a GAF of 62. (AR 656.) It is noted that her bipolar disorder was doing well and she was stable. (AR 657.)

On May 24, 2013, Plaintiff reported that she had decompensated somewhat with increased anxiety, insomnia and decreased concentration. (AR 652.) She went without her medication for a period of time and had just begun taking them again two days prior to the appointment. (AR 652.) Plaintiff was noted to be cooperative and more pleasant. (AR 652.) Her thought content was "hyperverbal, difficult to interrupt, flight of ideas." (AR 652.) Plaintiff had an otherwise normal examination and a GAF of 62. (AR 652-653.) Her bipolar disorder was noted to be doing well, stable. (AR 654.)

On May 29, 2013, Dr. Muir completed a medical source statement opining that Plaintiff's ability to understand and remember simple instructions, carry out simple instruction, and judgment to make simple work-related decisions was mildly impaired. (AR 458.) Plaintiff's ability to understand and remember complex instructions, and carry out complex instructions and make judgment on complex work-related decisions was markedly impaired due to anxiety, insomnia, reduced concentration affecting executive functioning, i.e. planning and memory. (AR 458.) Plaintiff's ability to interact appropriately with the public, supervisors, co-workers and respond appropriately to usual work situations and changes in a routine work setting were moderately impaired due to mood instability, affective instability, mood dysregulation, impulsivity, anxiety, depression and irritability. (AR 459.)

On July 11, 2013, Dr. Muir noted that Plaintiff's symptoms have stabilized. (AR 649.) Plaintiff had a normal mental examination and reported that she was doing good. (AR 649-650.) Plaintiff had a GAF of 62 and her bipolar disorder was noted as doing well and was stable. (AR 651.)

On September 26, 2013, Plaintiff reported that she was 100 percent better than she was 3

years ago and continues to improve. (AR 645.) She complained of concentration and focus issues. (AR 645.) Plaintiff had a normal mental examination and was assessed with a GAF of 62. (AR 645-646.)

On December 4, 2013, Plaintiff reported that her symptoms were stable and her concentration had improved over the past 2-3 weeks. (AR 641.) Plaintiff had to have surgery due to falling off a roof and was doing better since she was able to go back home. (AR 642.) Plaintiff had a normal mental examination and reported that she was doing good. (AR 642.) She had a GAF of 62 and her bipolar disorder was noted as doing well, but that she continued to experience concentration difficulties. (AR 643.)

Plaintiff had a normal examination on January 29, 2014 reporting that her symptoms are stable and well controlled. (AR 637.)

On April 4, 2014, Plaintiff came in due to increased agitation after her husband was arrested and taken to jail where he was beat into a coma. (AR 634.) Plaintiff reported that he woke up with partial paralysis and "brain damage" and as a result her symptoms had decompensated with increased agitation, irritability, and insomnia. (AR 634.) Other than being tearful, Plaintiff's mental examination was normal and she had a GAF of 59. (AR 634-635.)

On May 7, 2014, Plaintiff reported that her medication was helping her irritability and anger over her situation. (AR 631.) Plaintiff reported that she was sleeping better and her irritability had improved. (AR 631.) Plaintiff had a normal mental examination and a GAF of 65. (AR 631-632.) The record notes that Plaintiff's bipolar symptoms had improved and she was functioning well despite the stressors with her husband. (AR 633.) Dr. Muir completed a mental questionnaire stating that Plaintiff's memory, concentration, and judgment have significant impairment that would impair her ability to work; her executive functioning was impaired. (AR 633.) Plaintiff's mood swings and social isolation are significant impairments that would impair ability to work full-time week after week. (AR 672.)

Dr. Muir further opined that Plaintiff did not need assistance from others for self-care. (AR 673.) Her social functioning impairs her ability to work with supervisors, co-workers, or the public. (AR 673.) Plaintiff's mental illness impairs her ability to adapt to stressors in normal

work environment. (AR 673.) Plaintiff has no medication side effects that would impair work. (AR 673.) She is not likely to improve in the next 12 months or less. (AR 673.)

Upon review of the medical record substantial evidence supports the ALJ's finding that Plaintiff's bipolar disorder was stable, she was doing well, and her mental health records show improvement of her symptoms and fairly benign mental status findings. Specifically, the medical record consistently notes that Plaintiff's mental conditions were stable, her GAF scores place her symptoms in the mild range, and examination findings were consistently normal.

The record consistently notes improvement in Plaintiff's symptoms, including good anger control, once she was placed on medication. (AR 336, 337, 338, 344, 355, 388, 428, 637, 641, 645, 649, 651, 654, 655, 657.) While the record does note periods in which Plaintiff's symptoms increased, it also reflects that these occurred when Plaintiff had been off her medication (AR 390, or in response to some change in her situation such as being close to be evicted from her home (AR 378, 429, 652), being over sedated on her medication (AR 377), having surgery after falling off a roof (AR 642), and her husband's health issues after he was beaten while in jail (AR 637).

Similarly, Plaintiff's GAF score indicates an improvement in her symptoms to the point that she was consistent assessed with symptoms in the mild range or only some difficulty in social or occupational functioning. (AR 377, 379, 380, 381, 383, 385, 387, 389, 391, 430, 632, 642, 646, 650, 653, 657.) While a GAF score does not assess a claimant's ability to work, it is still relevant. Graham v. Astrue, 385 F. App'x 704, 706 (9th Cir. 2010); Chavez v. Astrue, 699 F.Supp.2d 1125, 1135 (C.D. Cal. 2009). Here, Plaintiff's GAF scores are particularly relevant because they provided over a period of multiple years by different providers and show generally consistent improvement in her mental condition.

The ALJ provided legitimate and specific reasons for the weight provided to Dr. Muir's opinion that are supported by substantial evidence in the record.

3. The ALJ Did Not Reject Dr. Muir's Opinion Regarding Plaintiff's Marked and Moderate Limitations

While Plaintiff argues that the ALJ rejected the marked and moderate findings of Dr.

Muir, the ALJ incorporated such limitations into his residual functional capacity assessment. Dr. Muir found that Plaintiff had marked limitations in her ability to understand and remember complex instructions, carry out complex instructions, and make judgment on complex work-related decisions due to anxiety, insomnia, reduced concentration affecting executive functioning, i.e. planning and memory. (AR 458.) Dr. Muir also opined that Plaintiff was mildly impaired in her ability to understand and remember simple instructions, carry out simple instruction, and judgment to make simple work-related decisions. (AR 458.) The ALJ limited Plaintiff to simple tasks requiring limited judgment. (AR 714, 716.) This is consistent with the marked and mild limitations opined by Dr. Muir. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) ("an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony").

Dr. Muir also found that Plaintiff's ability to interact appropriately with the public, supervisors, co-workers and respond appropriately to usual work situations and changes in a routine work setting were moderately impaired due to mood instability, affective instability, mood dysregulation, impulsivity, anxiety, depression and irritability. (AR 459.) The ALJ considered Plaintiff's moderate limitations and found that, in addition to the limitations discussed above, Plaintiff could only have limited interaction with others.[10] (AR 714, 716.) Moderate limitations in concentration, persistence and pace are sufficiently accounted for by limiting a plaintiff to simple repetitive tasks. See Thomas, 278 F.3d at 955-56; Sabin v. Astrue,[11]

---

[10] While Plaintiff has not challenged the residual functional capacity assessment, the Court notes that the ALJ found that Plaintiff was limited to occasional interaction with the public. (AR 714.) The residual functional capacity finding that Plaintiff was limited to occasional interaction with the public appears to be error. However, any such finding would constitute harmless error. In the opinion itself the ALJ found that Plaintiff's mental limitations would limit her interactions with others. (AR 716.) Further, at the July 1, 2014 hearing, the ALJ proffered the hypothetical of an individual who could only socially interact with supervisors, coworkers, and the public occasionally. (AR 715.) The VE opined that an individual who was limited to only occasional contact with others could work as a marker and folding machine operator. (AR 751-752.) These are the jobs the ALJ identified that Plaintiff can perform in the opinion. (AR 717.) The jobs identified by the ALJ in the opinion only require occasional interaction with coworkers, supervisors. Therefore, any error in the wording of the residual functional assessment would not require reversal in this instance.

[11] Unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1. Ninth Circuit Rule 36-3(b)

337 F. App'x 617, 621 (9th Cir. 2009) (limitation to simple, repetitive, routine tasks adequately captures moderate limitations in concentration, persistence and pace). In Stubbs-Danielson, the Ninth Circuit found that limiting the plaintiff to simple, routine, repetitive work properly incorporated moderate limitations related to pace, concentration, attention, and adaption. 539 F.3d at 1174.

The Ninth Circuit has also found that limitation to simple routine tasks performed in unskilled work is consistent with moderate limitations in social functioning. Rogers v. Comm'r of Soc. Sec. Admin., 490 F. App'x 15, 17 (9th Cir. 2012); see also Langford v. Astrue, No. CIV S-07-0366 EFB, 2008 WL 2073951, at *3 (E.D. Cal. May 14, 2008) (moderate limitations in several areas of mental functioning does not preclude work involving simple, repetitive, non-hazardous tasks); Henry v. Colvin, No. 1:15-CV-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (quoting SSR 85-15, 1985 SSR LEXIS 20) ("Notably, simple and unskilled jobs 'ordinarily involve primarily dealing with objects, rather than with data or people.' ").

District courts in the Ninth Circuit find that low tolerance for stress or moderate limitations in dealing with change are encompassed in a residual functional capacity that limits the plaintiff to simple tasks. Henry, 2016 WL 164956, at *18; Keller v. Colvin, No. 2:13-CV-0221 CKD, 2014 WL 130493, at *3 (E.D. Cal. Jan. 13, 2014); Jenkins v. Colvin, No. 1:15-CV-01135-SKO, 2016 WL 4126707, at *7 (E.D. Cal. Aug. 2, 2016). The ALJ did not reject the moderate and marked findings but accounted for them in considering Plaintiff's limitations by finding that Plaintiff was limited to simple, repetitive tasks and using judgment and interacting with the public on an occasional basis.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V.
## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in the weight provided to Dr. Muir's opinion.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Christine L. Clark. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **June 21, 2017**

_____
UNITED STATES MAGISTRATE JUDGE